IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| JAMES NELSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 01-PT-2920-M |
| ) | |
| MONUMENTAL LIFE ) | |
| INSURANCE CO., ) | |
| ) | |
| Defendant. ) | |

FILED
02 NOV -6 PM 3:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
NOV - 6 2002

## MEMORANDUM OPINION

This cause comes on to be heard upon Defendant Monumental Life Insurance Company's ("Monumental") Motion for Summary Judgment, filed on October 2, 2002.

### FACTS AND PROCEDURAL HISTORY

Monumental is a corporation organized under the laws of Maryland, with its principal place of business in Maryland. *See* Notice of Removal at ¶ 3. Monumental is in the business of selling disability insurance policies. *See* Compl. at ¶ 1. Plaintiff James Nelson ("Nelson") is a resident of Alabama. At all times relevant to this case, Nelson was an owner/operator contract truck driver with Welborn Transportation ("Welborn"), which was owned at that time by Boyd Brothers Transportation, Inc. ("Boyd Brothers"). *See* Pl. Ex. 1 at ¶ 2. Boyd Brothers sponsored a group disability insurance plan for its drivers ("group plan"), and said plan was written by Monumental. *See* Def. Ex. A.[1] There is no dispute that Nelson was covered under the group plan.

---

[1] According to Nelson, there was a legal requirement that every owner/operator contract driver purchase disability insurance, and Boyd Brothers required drivers to purchase disability insurance before that driver could work with Boyd Brothers. *See* Pl. Ex. 1 at ¶ 3. The premiums for the insurance were deducted from Nelson's settlement checks.

Nelson began working with Welborn around January 1998. On or around June 29, 1998, Nelson suffered an on-the-job injury which left him disabled. *See* Compl. at ¶ 3. On or around July 13, 1998, Monumental received notice of a claim filed by Nelson. *See* Def. Ex. B-1. After the seven-day (7) waiting period had expired, Monumental began providing Nelson Temporary Total Disability Benefits ("Temporary Benefits") in accordance with the plan. *See* Def. Br. at ¶ 4.[2]

On July 24, 1998, Monumental's claim administrator sent a letter to Nelson asking for "verification of earnings by submitting your 1099, last years tax form, or 13 weeks of settlement sheets for the weeks prior to the date of your injury." *See* Pl. Ex. 1-B; Def. Ex. B-2. According to Monumental, it provides Temporary Benefits without documentation in order to give an insured immediate relief. However, ultimate relief is based on the insured's income for the year prior to the accident, and any award may be adjusted based upon the information submitted by the insured. *See* Def. Ex. A-16; Ex. A-17; Ex. A-22. The group policy also gives Monumental the right to seek reimbursement for overpayment or to offset overpayment against future benefits. *See* Def. Ex. A-22; Ex. B.

In response to the letter, Nelson submitted settlement sheets for the thirteen weeks prior to his injury, from March 30, 1998 to June 29, 1998, which evidenced an income of $17,887.88. *See* Pl. Br. at ¶ 6; Def. Br. at ¶ 6. Monumental determined that Nelson averaged a per week profit of $454.07. *See* Def. Br. at ¶ 6. Using those figures, Monumental calculated that the benefit payment would be $307.72. *Id.* Based on these calculations, Monumental paid Nelson

---

[2]The pertinent sections regarding Temporary Benefits can be found at Def. Ex. A-13; A-16.

2

$28,928.57 for the period July 15, 1998 to May 19, 2000. *See* Def. Br. at ¶¶ 6-7; Def. Ex. B.[3]

As Nelson's eligibility for Temporary Benefits was ending, he began the process of seeking Continuous Total Disability Benefits ("Continuous Benefits").[4] To be eligible for Continuous Benefits, Nelson had to receive a favorable ruling from the Social Security Administration finding that he was disabled. *See* Def. Ex. A-17. Ultimately, Nelson did receive a favorable ruling. *See* Def. Ex. B-3. He was to receive $775 per month from the Social Security Administration. *Id.* Using the settlement sheets provided by Nelson, Monumental calculated that he should receive $525 per month[5] in Continuous Benefits, for a maximum of 164 months, running from July 16, 2000 to September 9, 2013 (Nelson's 65th Birthday). *See* Def. Ex. B; Ex. A-13; Ex. A-17.

After Nelson received his favorable determination from the Social Security Administration, Monumental's claims administrator again asked Nelson to provide his 1997 tax return. *See* Def. Ex. B-4. Presumably, this request would allow Monumental to verify that Nelson was entitled to the $525, based on his prior year's income. Nelson did not provide this information until April 2002, six months after this lawsuit was filed. Monumental, because it did not receive the requested information, decided not to provide Nelson with Continuous Benefits.

Nelson filed suit in the Circuit Court of Etowah County, Alabama, on October 4, 2001. He alleges (1) breach of contract, and (2) intentional/bad faith failure to pay benefits due under the contract. Monumental removed the action to this court on November 16, 2001, based upon

---

[3] To see how the figures were calculated, *see* Def. Br. at ¶¶ 4-8.

[4] The pertinent sections regarding Continuous Benefits can be found at Def. Ex. A-13; A-17.

[5] To see how the figures were calculated, *see* Def. Br. at ¶¶ 9-10.

diversity of the parties.

After this litigation was filed, Nelson provided Monumental with his 1997 tax information. *See* Def. Ex. B-5. According to Monumental, this information reflected that Nelson's actual profit from his trucking operations in 1997 was $600.88, well below the figure obtained from the thirteen weeks of settlement sheets provided by Nelson. *See* Def. Ex. B-5. According to Monumental, this new figure shows that, not only was Nelson not eligible for Continuous Benefits, but that he was overpaid for Temporary Benefits.[6]

Nelson, at least in his brief, does not dispute that these calculations are correct. *See* Pl. Br. at ¶¶ 6-7.[7] Rather, the only factual dispute addressed by the Parties' is whether Nelson received a copy of the group policy, which states that benefit determinations are based on the insured's prior year's income. *See* Def. Ex. A-16; Ex. A-17. According to Nelson, the only documentation he ever received was the schedule of benefits. *See* Pl. Br. at ¶ 3; Pl. Ex. 1. The schedule of benefits states that benefits will be based on "66 2/3 % of *Average Weekly Earnings*." *See* Pl. Ex. 1-A; Def. Ex. A-13 (emphasis added). By contrast, Monumental asserts that Nelson did in fact receive a copy of the certificate of insurance and the group policy that stated he would be paid based on the prior year's earnings. At the very least, Nelson's employer, Welborn, received a copy. *See* Def. Br. at ¶ 1; Def. Reply Br. at ¶¶ 1-5. Monumental points to Nelson's complaint to prove its point. *See* Compl. at ¶¶ 2, 4-5.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings,

---

[6]To see how these figures were calculated, *see* Def. Br. at ¶¶ 13-15.

[7]Nowhere in Nelson's brief does he dispute the calculations as asserted by Monumental.

discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS

I. **Breach of Contract**

According to Monumental, Alabama law requires the following to be present in a breach of contract claim: (1) the existence of a valid contract; (2) plaintiff's performance on the contract; (3) defendant's nonperformance; and (4) damages. *Mann v. Bank of Tallassee*, 694 So. 2d 1375, 1380 (Ala. Civ. App. 1996). Monumental points to the sections of the group policy dealing with Continuous Benefits to demonstrate that it has performed under the contract. *See* Def. Ex. B; Def. Ex. A-13; Def. Ex. A-17. Based on the plain language of the contract, Monumental argues, it cannot be liable for breach of contract. *See King v. Nat'l Found. Life Ins. Co.*, 541 So. 2d 502, 506 (Ala. 1989) (insurer did not breach contract where it paid claims in conformance with the policy).

Nelson agrees with Monumental's recitation of the requirements for a breach of contract claim. And Nelson, as noted above, does not dispute the benefit calculations, based on his 1997 tax return, made by Monumental. Rather, his argument revolves around which income figures, the 1997 tax return or the thirteen weeks of settlement sheets from 1998, should be used in making those calculations. Nelson disagrees that the group policy submitted by Monumental constitutes the policy between himself and Monumental. Nelson contends that he was never given a copy of the group policy relied upon by Monumental until after this litigation commenced; thus, Nelson argues, the group policy did not establish the contractual obligations between the Parties. Nelson notes that a written policy is not required to form a contract, as long as the essential terms are agreed upon. *Gulf State Mgmt. v. St. Paul Surplus Lines*, 646 So. 2d 654 (Ala. 1994); *Powell v. State Farm Mut. Auto Ins. Co.*, 601 So. 2d 60 (Ala. 1992). Here,

Nelson argues, the contract was set out by the schedule of benefits, which is the only document he claims to have received.

According to Nelson, the schedule of benefits set the maximum weekly benefit as 66 2/3% of average weekly earnings. There is no indication that the average weekly earnings was to be computed based on prior year's earnings. His belief was reinforced by the July 24, 1998 letter he received from Monumental, which requested that he verify his income by, among other things, submitting thirteen weeks of settlement sheets prior to the date of injury. *See* Pl. Ex. 1-B; Def. Ex. B-2. Based on this letter, he simply chose to verify his income by submitting the settlement sheets.

Nelson also notes that under Alabama law, a contract of insurance shall be construed liberally in favor of the insured and strictly against the insurer. *American States Ins. Co. v. Martin*, 662 So. 2d 245 (Ala. Civ. App. 1995). Moreover, exclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured. *Cincinnati Ins. v. Lee Anesthesia*, 641 So. 2d 247 (Ala. 1994). Although there is no exclusion here, Nelson argues that the same principle should apply, in that the terms of the contract should be construed against Monumental to provide maximum coverage. Nelson contends that he justifiably relied upon the schedule of benefits and is entitled to Continuous Benefits calculated with reference to the thirteen weeks of settlement sheets that he submitted to Monumental.

In reply, Monumental points to several portions of the pleadings to demonstrate that Nelson did in fact have knowledge of and/or received a copy of the certificate of insurance and/or group policy. *See* Compl. at ¶ 2 ("Prior to June 29, 1998, the *Defendant issued a disability insurance policy to Plaintiff, a copy of which is attached hereto* as Exhibit A.");

7

Compl. at ¶ 4 ("On or about the 27th day of December, 2000, the Plaintiff made a claim *under said policy with Defendant* for the disability benefits provided *by said policy*."); Compl. at ¶ 5 ("The Defendant has refused to pay benefits due *pursuant to the policy*.") (emphasis added). Attached to the Complaint was a copy of the group policy and the certificate of insurance. *See* Def. Reply Br. at Ex. 2. Moreover, Monumental has attached a copy of the group policy and the certificate of insurance that was sent to Nelson's employer, Welborn. *See* Def. Reply Br. at Ex. 3-A.

According to Monumental, Nelson cannot deny that he received the group policy since he has admitted to having it in his pleadings. *Sinclair Refining Co. v. Tompkins*, 117 F.2d 596, 598 (5th Cir. 1941) ("Pleadings are for the purpose of accurately stating the pleader's version of the case, and they bind unless withdrawn or altered by amendment."); *Pullman v. Bullard*, 44 F.2d 347, 348 (5th Cir. 1930) ("[An] opponent may rely on [statements of fact in a party's pleadings] as conclusive admissions so long as they are not altered or withdrawn by amendment.").

Moreover, even assuming that Nelson did not get a copy of the policy, "coverage under an insurance policy cannot be created or enlarged by . . . estoppel." *McGee v. Guardian Life Ins. Co.*, 472 So. 2d 993, 996 (Ala. 1985). Thus, according to Monumental, Nelson cannot claim estoppel simply by virtue of Monumental's alleged failure to deliver the policy. Finally, Monumental points out that there is no exclusion at issue here; thus, the cases cited by Nelson regarding exclusions are irrelevant.

## II. Bad Faith Failure to Pay

In order to prove bad faith failure to pay benefits, Monumental argues, Nelson must show (1) an insurance contract between the parties and a breach by defendant; (2) an intentional

refusal to pay the insured's claim; (3) the absence of a legitimate or arguable reason for that refusal; (4) the insurer's knowledge of the absence of a legitimate or arguable reason; and (5) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim. *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982). Here, Monumental investigated and promptly began paying Temporary Benefits. Not only did Monumental pay Temporary Benefits, it did so by accepting Nelson's unverified settlement sheets; indeed, it began payments before those settlement sheets were even submitted. Since there is no evidence that Monumental intentionally failed to determine whether there was an arguable basis for payment of the Continuous Benefits, Nelson is presenting a "regular" bad faith claim. *Ex parte Simmons*, 791 So. 2d 371, 379 (Ala. 2000).

In these "regular" cases, Monumental argues, "the proof offered must show that plaintiff is entitled to a direct verdict on the contract claim, and, thus, entitled to recover on the contract claim as a matter of law." *Nat'l Sav. Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982). Here, Nelson has not shown that he is entitled to judgment as a matter of law on the contract claim. The only evidence that Nelson has presented is Monumental's failure to pay Continuous Benefits, but such evidence, without more, is insufficient to make a case for bad faith failure to pay. *Safeway Ins. Co. of Alabama, Inc. v. Taylor*, 758 So. 2d 523, 525 (Ala. 1999). Moreover, Monumental's calculations, based on Nelson's 1997 tax return, clearly afforded an "arguable" reason for denying Nelson's claim for Continuous Benefits. *See McLaughlin v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 437 So. 2d 86, 91 (Ala. 1983) (If "any one of the reasons for denial

of coverage is at least 'arguable,' this Court need not look any further.").[8]

## CONCLUSIONS OF THE COURT

For the obviously indicated reasons, the court will grant the motion as to the bad faith claim.

As to the specific issue of whether Plaintiff received a copy of the policy, the court will give the Parties further time to address that issue. The Defendant's first brief did not specifically raise the issue of receipt of the policy, *vel non*, and more particularly did not address the admission in the pleadings issue. The court will give the Plaintiff an additional ten (10) days to address the issue factually and legally. The Defendant may reply within seven (7) days. The Parties should also address the issue of the effect, if any, of non-receipt of the policy if that is a fact. The Parties should further address whether any trial would involve any factual dispute other than receipt of the policy or not. Also, what is the difference between "average weekly earnings" and annual earnings divided by fifty-two (52)?

This _____ day of November, 2002.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[8]Nelson fails to address the bad faith claim in his Response Brief, a fact which Monumental points out in its Reply Brief.